First case on the docket this morning is Chandness v. Mays, cause number 5-13-0381, and Mr. Epperson, you may proceed, sir. Thank you. Good morning. Good morning. Good morning to you. Robert Epperson here on behalf of the plaintiff's appellate, Robert Chandness, his daughter Beverly Tweedy, and her husband Richard Tweedy. And I'd like to first just begin to say what a privilege it is to argue for the first time here in this tremendous courtroom. It's a real pleasure. We are here today appealing the order of summary judgment entered by the Circuit Court of Union County in favor of the defendants. The order found that Union County maintains a prescriptive easement on a portion of an old roadbed that runs along the property line between the plaintiffs and the defendants. Now, in describing the background facts of this case, I think it would be helpful if I could do so for a moment by pointing out a couple of areas on this map that we have here that's also included in the briefing. It's over here at this easel. And I'll just do that briefly. This appeal relates to a small portion of what used to be Otten Lane. And Otten Lane here, Union County obtained a prescriptive easement to that back in the 1800s. And Otten Lane, the existing portion of Otten Lane runs here from Interstate 51, or rather, New Highway 51, and it runs west all the way to this point here, which is the driveway of Mr. Chandness, one of the plaintiffs in this case. And as you can see, it kind of stops. From here all the way through going towards Stafford Church Road, not quite meeting there, is the area that's in dispute here. It's referred to in our briefs as the old roadbed. It is the area that has been basically used as the defendant's. And our client, my client's plaintiff's property is right here. They bought this property in 1993. It's a 21-acre property. As you can see, it sits at the end of Otten Lane. This is now a dead end road. And they bought the property here, and then shortly thereafter in 1993, Beverly Peeve, who's here, her father and great-mother bought the property right next to this, just to the east. And this third property that sits now at the end of Otten Lane. All of this property to the south here is the Brown family property. It's a much larger property. It's about 195 acres. It's been in the Brown family for about 140 years. The reason this is important is because it is from this property that the base defendant has acquired their 5-acre parcel free of charge from the Brown family. And it sits approximately right here. There's a plaque under here that we could even drill down a little closer, but I don't think that's necessary. So the Brown 5-acre parcel sits right here, just to the south of the Peeve property, and right alongside the old road then. So that's kind of the label now in terms of the different pieces of property you're issuing. I guess there's no question, is there, that that 5 acres, without regard to whether they acknowledge it would be landlocked and so forth, but there is no question that that 5 acres is landlocked with no other access and that it is continuous to the old roadbed. That is right. It has no access to a public road. You know, what they could negotiate or deal with the Browns in terms of getting around, you know, I can't speak to that. But there are no other public roads that they could access from that 5-acre parcel that they chose and selected on that old roadbed. In fact, of course, this litigation, of course, centers on the old roadbed. The plaintiff's position is that Union County a long time ago abandoned the old roadbed and that portion of Bottom Lane. The defendants, of course, have argued that Union County never abandoned the old roadbed, and therefore it could be opened up to allow traffic to go, you know, from Newt Highway 51 all the way back through towards Casper Church Road. The circuit court in Union County granted the defendant's motion for summary judgment, finding that Union County had not intended to abandon the old roadbed and leave the maze landlocked. Now, the trial court's order was flawed because the clear and satisfactory evidence shows that the old roadbed reverted back to the Tweedys, and that's because under Illinois law, a public road acquired by prescriptive easement returns to the original title holders or their successors in interest if the road is either vacated by public officials or if the road is abandoned. Okay, so we know it was never vacated by public officials. That's right, and we've never argued that it has been. I'm sorry, go ahead. So it boils down to whether or not it was abandoned. That's right. And we have a legal definition of abandonment that was discussed in Hart v. Schaffer. That's right. Pretty much what the trial court relied on, is that right? Right. In Hart v. Schaffer, the definition relied upon at Hart, relied upon by the circuit court, has been the definition relied upon for about 120 years. The cases that discuss this issue go way back, and they continue to be cited too. And that definition is, is the road, here the road could be abandoned either by non-use coupled with the acquisition of another legal right to another road or through lack of necessity. And so, in the Hart decision, made very clear that these are two separate avenues towards abandonment. There has been clear evidence in this case showing that the old roadbed has not been necessary to Union County for decades. First, we have evidence of non-use of the old roadbed. Now there's a question about that. No. There's no question it wasn't used. Trees grew up in it. Yeah, it was described, I believe, in various testimonies as a wilderness. No vehicles could get back there. I believe Tweedy testified that you wouldn't even know there was a road back there when they got the property. Was there a hut or anything? You know, for my friends that I know in Union County, I suspect there was hunting in that area because it was just open. It's a lot of property. I know there's farming done on the ground land around it, but in terms of what exactly happened on the old roadbed, I'm not sure. I don't think there's any clear testimony. The position is that the old roadbed is not necessary to Union County, and this is evidenced by a number of things, including non-use, but not only non-use. The Otten Lane became unnecessary as a through road because it is a narrow 12- to 14-foot-wide gravel road that's over 125 years old and was originally used for horses and buggies. There's testimony to that fact. The lack of necessity of the old roadbed really became clear in the 1960s when several things happened. First, Union County stopped maintaining it, and what's significant here is that they just stopped maintaining a portion of Otten Lane. They chose to maintain one part but not the other, so they deliberately selected the old roadbed and said, we're not doing this anymore. And that is essentially, they basically stopped maintaining it as a thorough road. The old roadbed also, in 1964, Union County stopped collecting motor fuel taxes in relation to the old roadbed. And in the 60s, the Postal Service stopped using Otten Lane as a thorough road. So all of these things are happening in the 1960s, and they all serve as facts and evidence to consider as to whether Union Lane needed the old roadbed and whether they intended to abandon it. Now, the key development in the 1960s, evidencing lack of necessity, was the construction of new Highway 51 in Union County, which intersected. It's a north-south highway that intersected the eastern portion of Otten Lane. You can see that on the map there. And it's a paved road. It's considerably wider, more convenient than a one-lane gravel road. It has shoulders and pavement and is certainly a much more convenient thorough road and a much more convenient way and safer way to get around Union County. As such, even a cursory review of the maps of Union County, such as the map that's been provided in the briefing, demonstrates that there are wider, safer, paved, more convenient ways to get around Union County. It's a longer route, though, right? It's a longer route. But it's a better one. What did Hart say about that situation where you have a longer route? Well, Hart is interesting. Hart focused on a couple of different things. First, it looked at whether they – the way I – let me back up and say – the way they looked at this is they said that first, you know, they addressed the issue of whether the party could prove or had proved that there was a – the public had lacked – did not need the road anymore. They looked at lack of necessity. And they said two things that distinguished that case from, you know, the result of that case from the situation here, even though I think the reasoning applies directly to ours. And they said, one, is that the party there failed to show any kind of change in circumstances, that in order to show that the road became unnecessary, they had to show that something changed. They also – And your point on that is the building of New 51. Right. Because in that case, what the party did is they tried to point out and say, look, these people are using alternate routes, you know, pre-existing roads, and they've shown the lack of necessity by simply not using it. You know, we're using these other roads now. And the Hart court said that you can't do that. That's not quite enough. You have to show that something changed and something caused them to use these different routes, such as lack – such an improvement to the existing roads. They didn't show that. Here, however, we have not only a new road, a change in circumstances – a change in circumstance that evidenced by an altogether new road, you know, the Highway 51, which is paved compared to a gravel road. But because of that comparison, the paved, wider road with shoulders to a gravel road, it's also improved. So you can't really compare – my point would be is that you can't point to the distance as the sole factor in determining whether the old roadbed became unnecessary because there are other factors and other evidence at play. The Hart court did find that significant, though, didn't it? I mean, they particularly cited that, you know, since it was a longer route, it wasn't – they had not acquired the legal right to another road that served the same purpose. Right, and that's addressing the first problem of the abandonment argument. And our argument is it hasn't really relied on the first problem. It's relied on the second problem, the lack of necessity, which Hart made very clear in more than any other case that I read that these are two separate problems. And if we – you know, if the party comes in and shows that it isn't necessary, then the road has been abandoned. Now, Hart went on to say you need to show that there's a change in circumstances because otherwise you're left with just simple non-use was the Hart court's point. And we've done that here. Tell us what the significance is, if any, of the fact that's in the record, I guess, that this was all taken to the Union County Board and the Union County Board voted and said we haven't abandoned that road. Right. Well, you know, it's interesting. There's a lot of discussion in the briefing about the Board of Commissioners' decision as well as the Thomas Gilchrist letter or proclamation in 1999 came, you know, well before the Board made their determination. And what you have here is in 1989, Mr. Gilchrist, acting on behalf of the Union County Highway Department, looked it up, Lane, and looked and said, you know, heading west from New Highway 51, the public road stops here. And he pointed to the driveway of what is now Mr. Shamus' property, which means it stopped at the old roadway. There's some argument about exactly what that means, whether he said it stopped here. He said it is a public road from one point to another. And I think it's a fair understanding, if he didn't even take it another step further, that it's not a coincidence that he stopped at where the old roadbed began. And so that proclamation is sitting out there in 1989. Then, you know, 17 years past, something like that, the Mays properties, the Mays defendants, landlocked themselves in their property and then say, hey, we want access to the old roadbed now. Union County hasn't made, you know, for 40 years, Union County hasn't acted in any way that would ever suggest that they consider the old roadbed was still a public road. And Mr. Gilchrist's letter is certainly evidence to the contrary of that. But nonetheless, Mr. Boyd, who now is in Mr. Gilchrist's position, writes up an opinion and provides it to the board of commissioners and says, you know, I find that this road is public to Mr. Mays and everybody else cannot be denied access to it. This is what my question is. What's the legal significance of that? The fact that the county board at this point said we we never intended to. Anyway, I would say both of Mr. Gilchrist's opinion and the board's opinion are only evidence as to whether Union County ever whether Union County intended to 30 years before to abandon it, whether it wasn't necessary to the old roadbed. By the time Mr. Boyd came on the scene, the old roadbed had been abandoned. It either had been abandoned by that point or it hadn't been. And so really, Mr. Boyd's opinion and that of the board of commissioners, which incidentally was not provided with Mr. Gilchrist's opinion when they were making that decision. Mr. Boyd provided all this information. He didn't provide Mr. Gilchrist's letter for the board to consider. But be that as it may, really, all of that is just evidence for perhaps a trier factor to determine whether there was intent to abandon and whether the Union County deemed that the old roadbed was necessary. Because, again, by the time Mr. Boyd made this determination, it either had been abandoned or it hadn't been. With the trial court ruling on cross motions for summary judgment, are the parties agreeing there's no genuine issue of material fact? That's an interesting question. Our position is that, not surprisingly, is that we believe that the non-contested facts is interpreted in the way that we believe they should be interpreted, which support having summary judgment entered in our favor. However, if, for instance, there is a argument that Mr. Gilchrist's letter could be read one way but not another, and there's other facts along those lines that would seem to lend themselves to disagreement, we would argue then that, at a minimum, a jury should be allowed to consider, one, whether there was an intent to abandon the road and whether the old roadbed was necessary to Union County going back to the 1960s. One of the issues that I want to make sure we hit on here is this argument about the Mays defendants being landlocked. The circuit court relied heavily on this finding, and this court should not. No weight should be placed on the landlocked nature of this 2001 property gift when ascertaining the Union County's attention as to the old roadbed back in the 1960s. There's no evidence of anyone being landlocked in the 1960s. There's no evidence of anyone being landlocked in the 1970s, the 1980s, and the 1990s. Instead, in 2001, the defendants knowingly and intentionally landlocked themselves when accepting and selecting. They got to pick their parcel, free of charge, this five-acre gift of property from the Browns that had been in the family for 140 years. And giving that gift, they didn't also give any kind of an easement that allowed them access? No, no, nothing like that. And, in fact, you know, the concern here for my clients has always been is that that property, the Brown family property, is going to be developed, you know. So, and not only would a thorough road be opened up, you know, they would destroy the reasons that they bought the property in the first place, but you're going to have a whole lot of homes sitting along the old roadbed as well. Well, is it, I mean, let me just ask this. I mean, the Union County Board, when they said, no, we never abandoned it, they, is there anything like, well, we haven't been maintaining that until future development comes along, or? No, nothing like that that I recall. Okay. I think the point here is that especially given the selection of this property and the location of it, the fact that the Browns have sought an easement across the Tweedys property for some time, and the Tweedys as well as the prior owner of the property were abused because of these concerns, and the fact that the Mays defendants have no interest in a limited easement that would just allow them access to their property, you know, those are the things that are driving the concern about what's really going on here as the Browns and the Mays working together to open this up and then see what can go, you know, happen from there with additional access to the new Highway 51. And again, this goes to, you know, some of the other equitable arguments that we've raised, is that would absolutely destroy the entire reason that both the Tweedys and her father bought all of this property because they placed themselves down at the end of a dead-end road in the country for the peace and solitude that, you know, that type of property provides for them. So I would say in closing, I know I'm running short on time here, that the court should find that the old roadbed was banded because the clear evidence just demonstrates that the old roadbed is a narrow, motor-fueled access for the old roadbed, and we knew Highway 51 was constructed with paved road and shoulders and everything else, and that even the Union County Superintendent of Highways recognized this in 1989, at an absolute minimum, that it would be, you know, his statement and the impact of that would be something that a trier of fact could consider and judge. And then, again, no weight should be given to the landlocked nature of the Mesa finish for the reasons I've talked about. And then, in fact, the Union County should be stopped from arguing that it maintains its prescriptive easement in light of its conduct and the way it's treated the old roadbed for the last 40-plus years. Thank you, Your Honor. Thank you. Thank you, Mr. Everson. You'll have a chance to rebut, I'm sure. So are some. Good morning, Your Honors. May it please the Court and the Council, my name is Megan Orso, and I represent the defendants, appellees, Allen and Janine Mays, in this matter. As plaintiffs discussed, the issue before the circuit court was whether this portion of roadway, which is now known as Otten Lane, had ever been abandoned or not. The roadway, which is now known as Otten Lane, originally connected Casper Church Road on the west to Spanish Bluff Road on the east. It's not disputed that portions of that road remain public. From New Route 51 to the west to the plaintiff's driveway, it's not disputed that's a public road. On the other side, from Casper Church Road to the east, to the Treece property, is public. So we have a small section of roadway in between those two I just mentioned. That's at issue, is whether it was abandoned. Otten Lane is an east-west roadway. This roadway is contiguous to the property the Mays acquired in 2001. And that property was actually acquired in recognition of work that the Mays had performed for the property on it. It was not just a gift. The Mays acquired that property with the intention of developing a home for their family to live on. The roadbed had become impassable due to the growth of trees and brush, and excavators were hired to clear that. At that time, the plaintiffs undertook to stop the excavation. And the question was then presented to the Union County Board of whether Otten Lane was a public roadway or if it had been abandoned. As a result of that inquiry, Bill Boyd, the then Union County Engineer, conducted an investigation and reported his findings to the Board. Based on that, the Union County Board of Commissioners, as a legislative body of the county, found the road had never been abandoned. But what legal significance should we give that? That is significant when we go to the estoppel argument. There's cases that say for affirmative acts of the government body to be considered. They have to be just that, an actual act of the legislative body. It can't be a letter of an agent of the county. It should be an act of the board. So in this case, the board considered the investigation, had a board meeting, and found that the road had not been abandoned. Based on the finding that the road was public, the lawsuits were initiated, and eventually cross motions for summary judgment were filed. Those motions indicated to the court that there were no material issues of fact and dispute, and that the only question for the judge was one of law as to whether this portion of Otten Lane had ever been abandoned. The judge applied all the law to the case and put that in his two-page opinion and found that this road had not been abandoned. So with the parties agreeing with that at the trial court, there's no genuine issue of material fact. Are you bound by that here? Can we send it back and you can have your trial? I do think your honors could send it back. We are asking that the circuit court decision be affirmed. I couldn't hear you. I'm sorry. I do think your honors could send the case back for a trial. However, based on the facts and the opinion, I believe that this would be appropriate to be affirmed and not sent back. The circuit court... There was not an abandonment at that time for the road? I'm sorry, your honor? There was not the abandonment of the road? It was not abandoned? That is correct. The circuit court found that there was no intention that Union County ever intended to abandon this road. And they replied... Let me just ask. I mean, there's no question that the road hadn't been used for years. It's grown up with trees and all that. I mean, so when the circuit court made a finding it wasn't abandoned, are you saying that was under the legal definition? Yes. Which includes a requirement that the public has acquired the legal right to another road or for the necessity for another road to cease to exist. That is correct. It was under the legal definition as set forth in this court's decision in Hart v. Shafter. And that case stated the long-held rule that once established, a public highway remains a public highway unless it is vacated by the process set forth in the statutes, which where an agreement did not happen, or if it was abandoned. An abandonment will only be found where the public has acquired the right to another road or where the necessity for another road has ceased to exist. Well, you know, your opponent would say the fact that nobody used the road for all these years and all these trees grew up in it and everything is pretty good evidence that the necessity for another road has ceased to exist. What would you say to that? The case law disagrees with that. In the Hart case, it's a similar situation. That road had not been used in decades. There was actually a bridge in that case. The bridge had disappeared at some time in the 1930s. And later, when the county or the governmental body sought to reopen that road, the fact that the bridge was missing and that these trees, just like in our case, they were full-grown trees, shrubs, had taken over the road. And that made no difference in the Hart case. It's part of what is considered, in the Platt case, something similar happened. But the party actually undertook to remove the railroad. They took up all the ties. They took up the crossing signs. They removed everything. And that would be considered as to the abandonment. But just letting the property return to the wilderness has no effect on whether the public intended for that route to be abandoned. The plaintiffs have actually combined the two elements in their argument as to why the road has not been abandoned. The plaintiffs assert that the change in circumstances was the construction of new Route 51. This is ultimately an alternate route, is what the change in circumstances is. So, based on that alternate route, it's their belief that Otten Lane is no longer necessary. However, it should be noted that new Route 51 is a north-south highway, while Otten Lane runs east and west. The principles behind the law of abandonment implicitly require that this alternate route, new Route 51, serve the same purpose as the abandoned road. This additional burden is required as a roadway is an indispensable public necessity that the public would not abandon without replacing. New Route 51 does not replace Otten Lane. In fact, the plaintiffs in their deposition testimony admitted that there is no other route to their knowledge that has been created that serves the same purpose as Otten Lane. And that's what Hart says, isn't it? The mere fact that you can go out another way and go a roundabout way that's longer isn't the same as having a road that replaces the purpose of that road. That is correct. In the Hart case, actually, the road that was proposed as the alternate route, both routes actually ran north and south, and that's not the case here. Also, the roundabout way suggested by the plaintiff adds an additional three miles to the commute. The disputed portion of Otten Lane is only a half a mile. In the Hart case, the addition of one mile to what would be a short trip meant that there was not the same purpose being served. So in this case, we have three miles added to the commute, and it does not serve the same purpose as the east-west route. Plaintiffs also rely heavily on the letter written by Thomas Gilchrist in 1989. At the time, Thomas Gilchrist was the superintendent of highways for Union County. It's believed he was asked whether a portion of the roadway would continue to be maintained by the county. And in response to that, drafted a letter that stated from New Route 51, traveling east to what is now the plaintiff's mailboxes, it was then Earl Thompson, was considered both public. There's no mention of the road by name. There's no mention of the portion I discussed earlier from Casper Church Road to the Treece property. There's only a general declaration that this section asked about is public. The Gethys case, cited by plaintiff, explains the canon of statutory construction, that the expression of one thing is the implied exclusion of the other. So plaintiff is asking that as Thomas Gilchrist stated, this portion of the roadway is public, that must mean the rest of the roadway is private. And as we know from Casper Church Road to the Treece property, it is still public. The court in that case tries to explain the canon by stating, if you ask a boy if you would like to sell your bicycle and the boy responds, don't sell the horn, it could be implied with common sense that the boy wishes to sell the bicycle, just not the horn. However, the circumstances surrounding those inferences are very important. If you were to ask the same boy, would you like to sell your bicycle, and the reply was, I will sell the horn, you cannot imply that he wants to sell the bicycle. And that is the case here. Stating a specific section of highway as public does not exclude the rest of the highway as private. I would also like to address the argument of equitable estoppel. It is defendant's position that the equitable estoppel argument was not raised in the circuit court. There is a brief mention in the motion for summary judgment, it's two sentences, where the plaintiff states the Tweedie's purchased this property relying on the 1989 Thomas Gilchrist letter. There's no legal argument, that's the only part of the brief that's alleged to raise equitable estoppel. Is there any evidence in the record that the Tweedie's even knew about that letter before they purchased the property? There's no evidence one way or the other if they knew of that letter or not. There is evidence in the record that the plaintiff, Mrs. Tweedie, had no knowledge that there was a roadbed or anybody would think a roadbed was there. So there would be no reason to question that area. In fact, she had actually never even walked that part of her property near the old roadbed. There are several cases that actually addressed applying equitable estoppel against the public in cases such as this where there's a roadway involved. In those cases, the city or county, whoever was the authority, must have withheld control over the portion of the street. We can see that is present here. We stopped maintaining the roadway. And then private parties, acting in good faith on that lack of control, believed that the road was abandoned. However, there's an additional requirement that's not met in this case. Based on the belief that that portion of the street or roadway was abandoned, the private parties must erect a structure or make some improvement of lasting and valuable character on the alleged roadway. The Supreme Court in 1901 in the DeKalb case looked at this situation when a private property owner had erected a wooden fence, planted a tree and some shrubbery on what was later declared to be a public roadway. It had been poor and the owner thought it was abandoned. Additionally, that landowner had constructed an addition onto his house which was significantly closer to the roadway than he would have built it if he had known otherwise. When asked to remove the property, suit followed and the court found that the construction of that wooden fence, the trees, the shrubbery, were not of such lasting and valuable character to divest the public of its indispensable right to the highway. When asked about the addition that was built onto the house, even though that was an addition of lasting and valuable character, it was not on the roadway. It was just near the roadway. And as such, there was no reason to divest the public of its right to the roadway. On the other hand, in the Beardsley case, the city allowed a railroad to construct substantial structures and improvements on the road to help with the railroad's business. In fact, the railway expended $400,000 in the 1900s on those improvements. Later, a private citizen came forward and asked that those improvements be removed so that public access to the road was available. The court found that that's a case where there were improvements of such a lasting and valuable character and they were actually on the roadway, that it would be an injustice to require the railroad to remove that. That situation is not present here. Nothing has been constructed on the old roadbed by the Tweedies. It has been allowed to return to nature and brush and trees grew on their own. It wasn't even like the DeKalb case where the landowner undertook to plant some landscaping. Also, when dealing with the public body in Estoppel, there must be an affirmative act on the part of the public body. This is what I referenced earlier. This cannot be an act of a ministerial officer or a ministerial misrepresentation. It must be the act of the government body itself, such as legislation by the county board, which we have in this case. So the Gilchrist letter would not be an affirmative act of the Union County Board in 1989. This is merely his opinion stating that a section of the road is public and it will be maintained as he was the superintendent of the highways who decided which roads would be maintained and in what manner. Also, in Equinville-Estoppel against public bodies, non-action is insufficient to work in Equinville-Estoppel. So the non-actions we have in this case were the discontinuing the maintenance on this section of Otten Lane is a non-action. Not collecting motor fuel taxes is a non-action. The Supreme Court in 1876 stated that to divest the public of an interest based on the lack of action by one person would be an injustice. There must be an action for Equinville-Estoppel to apply, which we do not have here. The only action by a government board we have is the Union County Board declaring that this road has never been abandoned and access to it cannot be denied. As there has been no abandonment and this is a case where Equinville-Estoppel is not created, we would ask that the circuit court's decision be affirmed. All right, thank you, Ms. Urso. Thank you. Mr. Eckerson, you've got it. I'd just like to address a couple of points raised. First, the point was made that we're somehow collapsing the arguments or misconstruing the hard decision. And that we're saying that, look, our change of circumstances simply is an alternate route. We're somehow trying to do an end run around the requirements that accompany an alternate route, abandon the case law. That is not at all what we are doing, what we're doing here. What we are saying, because typically when these cases come up, it is a two-lane road here and a two-lane road there, and it's kind of an apples-to-apples comparison of how far are they apart and can you connect the dots and are they about the same distance, how long does it take? But here, we're not so much as arguing that there's just simply an alternate route, but that there's a better route. And that arises from the facts here where you're comparing a one-lane gravel road against a highway. People can drive safely and more quickly. And as I mentioned in the briefing, there's precedent talking about just even looking at the maps, you can tell this kind of thing when you're comparing it. Like here, a one-lane gravel road compared to a two-lane highway that's been built. And what's important is that Hart actually is the one that highlights this point in this argument. Hart recognizes this. Hart even says that you don't even have to have a new road. You can just show that more circuitous alternate routes are better, they're improved. You just need a change of circumstances to show that it became unnecessary. You don't have to show that there's an alternate route that is in every way equal, or rather it's not equal, identical to the prior route. And that's what we've argued here. We haven't just shown that there's a new road, we've actually shown that as well. But we've actually shown that there's a new road that is better than the road at issue here. And that argument, frankly, comes directly from the Hart case and the reasons set forth in that opinion. And then, lastly, I would like to speak again to the overall equities in this case. And I don't think there would be any question, if you describe this case to anybody, I don't think there would be any question that the equities in this case, what should happen is that it should favor the plaintiffs in this case. I mean, they purchased their homes, not just their homes, but the property around it, intending to live there, two separate pieces of property in reliance upon this idea that there was no road going back there. They didn't know. And nobody, if you ask anybody on the street whether the old roadbed was a public road, nobody would say that it was. I mean, this is a classic case from a policy perspective of when a prescriptive easement should revert back to the original landholder. They bought these properties in good faith, believing that they were buying a nice, quiet piece of property. And they paid real money for their properties. On the other hand, we have Macy's who, years later, knowing full well that there was not any access to this point, paid nothing for this five-acre property and is trying to take away this from the plaintiffs by, you could argue, or speculate by selecting a piece of landlocked property just to increase the chances of opening up this Brown property for whatever reason. And I think that it's important to note here that in all the years before the Macy's defendants bought this property, the Browns never came to the Tweedie's or the prior owners of the Tweedie's property and said, hey, this is a public road, we're going to get to open this up. They came asking for an easement. So there is no prior knowledge on the part of Tweedie's or anyone else that this was a public road until the Browns acquired this five-acre property. And so, again, we'd ask that you not take away the purpose that the Tweedie's and Mr. Shamus purchased their homes in order to facilitate this effort by the defendants in this case. Thank you. All right, thank you. Thank you. All right, thank you both for your briefs and arguments. We'll take this matter under advisement and issue a decision in due course.